```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF INDIANA
                    SOUTH BEND DIVISION
```

```
JAMES G. MORKOETTER,        )
                            )
     Plaintiff,             )
                            )
vs.                         )    No. 3:11-cv-485
                            )
SONOCO PRODUCTS COMPANY     )
a/k/a SONOCO FLEXIBLE       )
PACKAGING CO., INC.,        )
d/b/a "SONOCO,"             )
                            )
     Defendant.             )
```

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss Plaintiff's First Amended Complaint, filed by Defendant, Sonoco Products Company a/k/a Sonoco Flexible Packaging Co., Inc., d/b/a "Sonoco" ("Sonoco"), on April 20, 2012. (DE #15). For the reasons set forth below, the Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** as to Plaintiff's Family Medical Leave Act claim and **GRANTED** as to Plaintiff's Employee Retirement Income Security Act claim.

BACKGROUND

Plaintiff, James G. Morkoetter ("Morkoetter"), is a former employee of Sonoco. (First Am. Compl. ¶ 1). While employed by Sonoco, Morkoetter suffered from a variety of physical, emotional, and mental health conditions. (*Id*. ¶ 4). Sonoco terminated Morkoetter's employment on November 26, 2009. (*Id*. ¶ 6).

Subsequent to his termination, Morkoetter filed a Complaint against Sonoco on November 22, 2011, in the Fulton County Circuit Court. Sonoco removed the Complaint to this Court on December 19, 2011, and filed a motion to dismiss Morkoetter's Complaint on January 17, 2012. In response to Sonoco's motion to dismiss, Morkoetter filed a motion to amend his Complaint on January 27, 2012. On February 13, 2012, the Court granted Morkoetter's motion to amend and marked his First Amended Complaint as filed that same day.

Morkoetter's First Amended Complaint alleges claims under the Family Medical Leave Act ("FMLA") and the Employee Retirement Income Security Act ("ERISA"). With regard to Morkoetter's FMLA claim, he alleges that Sonoco is an "employer" as defined by the FMLA. (First Am. Compl. ¶ 2). Morkoetter further alleges that he "intended to take FMLA leave after he became a qualified employee by being employed [by Sonoco] for at least (1) year" and that "[j]ust before [his] one-year

2

anniversary, [he] informed [Sonoco] of his need to take FMLA in the future and notified [Sonoco] of his serious health conditions and need to take time off to attend to his own health care needs." (*Id*. ¶ 4). Specifically, Morkoetter alleges that:

> [Sonoco] retaliated against him because he gave advanced notice of his need to take FMLA and [Sonoco] purposely terminated [him] just prior to [his] qualification for FMLA leave, and retaliated against [him] by firing him on or about November 26, 2009, about five (5) weeks prior to when he would have qualified for FMLA coverage. [That Sonoco] knew about [his] serious health conditions and knew that [he] had plans to take medical leave *after becoming eligible* for FMLA [leave].

(*Id*. ¶ 6) (emphasis added).

With regard to his ERISA claim, Morkoetter alleges that Sonoco maintains a medical insurance plan ("Plan") for the benefit of its employees and that the Plan is governed ERISA. (*Id*. ¶ 3). As a result of his health conditions, Morkoetter alleges that he used Plan benefits, including medical insurance coverage for a hospital stay and various other medical expenses, and that, by using these benefits, Sonoco knew about his serious medical conditions. (*Id*. ¶ 5). Further, Morkoetter alleges "that [Sonoco] terminated him, in part, because he took advantage of [Sonoco's] Plan of health care insurance benefits and utilized those benefits, and [Sonoco] violated ERISA § 510 by interfering with [his] job by intentionally firing/laying [him] off because of his utilization of Plan benefits." (*Id*. ¶ 7).

Sonoco filed its Motion to Dismiss Plaintiff's First Amended Complaint and supporting brief on April 20, 2012. (DE #15.) Morkoetter filed a response in opposition to Sonoco's motion to dismiss on May 2, 2012. (DE #17.) Sonoco filed a reply to Morkoetter's response on May 14, 2012. (DE #18.) Therefore, the matter is fully briefed and ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss under Rule 12(b)(6), a court must accept all well-pled factual allegations in the complaint as true and construe all reasonable inferences in the light most favorable to the non-moving party. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under Rule 12(b)(6) a claim must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555.

4

*MORKOETTER'S FMLA RETALIATION CLAIM*

The FMLA allows eligible employees to take unpaid leave in certain circumstances when the employee becomes unable to perform their job duties due to a serious health condition. 29 U.S.C. 2612(a)(1)(D); *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590 (7th Cir. 2008). An "eligible employee" is defined as "an employee who has been employed for at least 12 months by the employer . . . and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). The applicable authorized implementing regulations note that "[t]he determination of whether an employee has [met the eligibility requirements] must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). Specifically with regard to "retaliation," the FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). *See King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999) (noting that 29 U.S.C. section 2615 "affords employees protection in the event they are discriminated against for exercising their rights under the [FMLA]"). Put another way, an employer cannot use an employee's reliance on the FMLA as a "negative factor in promotion, termination, and other employment

5

decisions." *James v. Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013) (citation omitted).

Sonoco argues that Morkoetter conceded he was not an "eligible employee" as defined by the FMLA at the time of his termination, and, consequently, Morkoetter cannot bring an FMLA retaliation claim. (DE #16, p. 5). Specifically, Sonoco contends that Morkoetter "admits that he had not worked for at least 12 months at the time he allegedly informed [Sonoco] of his interest in taking FMLA leave." (*Id.*). Essentially, Sonoco argues that this type of "pre-eligibility" retaliation claim should not be recognized under the FMLA. The relevant question, therefore, is whether an employee who was not yet eligible for FMLA coverage can bring a claim for retaliation under the FMLA when that employee gave notice to their employer of their intention to take FMLA leave once eligible and was terminated prior to achieving FMLA eligibility.

The Seventh Circuit has not directly addressed this issue; however, the Court has found several persuasive on point cases from surrounding district and circuit courts. For example, in *Reynolds v. Inter-Indus. Conference on Auto Collision Repair*, the court addressed the issue of "whether an employee is barred from proceeding with an FMLA claim if he or she has been employed for less than twelve months but requests leave to begin more than a year after employment commenced." 594 F. Supp. 2d

6

925, 927-28 (N.D. Ill. 2009). In recognizing this type of "pre-eligibility" FMLA claim, the court first noted that the FMLA contemplates situations in which employees must provide their employer with notice of foreseeable future leave. *See Id.* at 928; 29 U.S.C. § 2612(e)(1). The court explained that:

> [i]t would be illogical to interpret the notice requirement in a way that requires employees to disclose requests for leave which would, in turn, expose them to retaliation, or interference, for which they have no remedy. If employers were not bound by the FMLA before the employee is eligible, then the employee should not be required to give the employer any notice. Logic requires that the FMLA be read to require that that employee be permitted to make a charge against the employer for an adverse employment action. Furthermore, the FMLA protects the 'attempt' to exercise a right, which can only mean (in contrast with the actual exercise of that right) that the FMLA protects an employee who asks for leave even though he may not be eligible, such as the case here. 29 U.S.C. § 2615(a)(1).

*Reynolds*, 594 F. Supp. 2d at 928-29 (internal citations and quotation marks omitted). The court also pointed out that the implementing regulations state the eligibility determination must be made "*as of the date the FMLA leave is to start*." *Id*. at 929 (emphasis in original) (citing 29 C.F.R. § 825.110(d)). Finally, the court noted that it would go against the intent and purpose of the FMLA to allow an employer to "terminate an eleventh month-employee for simply requesting foreseeable leave for which he is eligible, when that employer would be clearly

7

prohibited from making that same decision a month later." *Id*. at 930.

Other courts have followed the same reasoning employed in *Reynolds*. In a recent Eleventh Circuit case, the court held that the "FMLA protects a pre-eligibility request for post-eligibility leave." *Pereda v. Brookdale Senior Living Cmty., Inc.*, 666 F.3d 1269, 1270-71 (11th Cir. 2012). The court noted that:

> a pre-eligible request for post-eligible leave is protected activity because the FMLA aims to support both employees in the process of exercising their FMLA rights and employers in planning for the absence of employees on FMLA leave. Protecting both reflects that the FMLA should be executed 'in a manner that accommodates the legitimate interest of employers' 29 U.S.C. 2601(b)(3) without abusing the interests of employees.

*Id*. at 1276. *See also Gleaton v. Monumental Life Ins. Co.*, 719 F. Supp. 2d 623, 629 (D.S.C. 2010) ("The court finds that an employee may bring a retaliation claim under FMLA if the employee was terminated prior to becoming eligible for FMLA leave, but the employee declared an intention to take leave more than one year after employment commenced.").

The Court agrees with the persuasive reasoning of these cases and finds that a pre-eligibility request for post eligibility leave is protected by the FMLA. Here, Morkoetter alleges that, just before his one-year anniversary, he informed Sonoco of his "need to take FMLA in the future" and that Sonoco

retaliated against him because it knew of his advance notice and "plans to take medical leave after becoming eligible for FMLA." (First Am. Compl. ¶¶ 4, 6). Taking these allegations as true and giving them the reasonable inferences they are due at this stage, the Court finds that the complaint adequately alleges that Morkoetter was eligible for FMLA protection against retaliation and rejects Sonoco's argument that dismissal is appropriate because Morkoetter was not an "eligible employee" at the time he notified Sonoco of his intention to take future FMLA leave.

Sonoco also argues that Morkoetter "fail[ed] to allege all of the elements of an FMLA retaliation claim." (DE #16, p. 6). Sonoco asserts that "[Morkoetter's] First Amended Complaint is so vague that it fails to demonstrate that Morkoetter engaged in any protected activity. It is also devoid of any facts sufficient to make a plausible casual connection between his alleged notification…and his termination." (*Id*.).

Morkoetter correctly notes in his brief that it is not necessary to plead the elements of a prima facie case to survive a motion to dismiss. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-511 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement. . . . This Court has never indicated that the requirements for establishing a prima facie case . . . also

9

apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Twombly*, 550 U.S. 544, 547 (2007) (indicating that the "plausibility standard" is consistent with *Swierkiewicz* and that "the Court is not requiring heightened fact pleading of *specifics*, but only *enough* facts to state a claim to relief that is plausible on its face") (emphasis added). Rather, under current pleading standards, a complaint must state a claim for relief that is "plausible" to avoid dismissal. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) *cert. denied*, 132 S. Ct. 1569, 182 L. Ed. 2d 191 (U.S. 2012).

In *Ashcroft v. Iqbal*, the Court provided a two part approach to be used in evaluating whether a claim is sufficiently pled under the "plausibility" standard. 556 U.S. 662, 679 (2009). First, a court should examine the complaint to distinguish between factual allegations and legal conclusions. *Id*. Unlike factual allegations, legal conclusions are not afforded an assumption of truth. Second, accepting any remaining factual allegations as true, the court should determine whether those factual allegations give rise to a "plausible" claim for relief. *Id*. With regard to the notion of a "plausible" claim, the Seventh Circuit recently explained:

> This is a little unclear because plausibility, probability, and possibility overlap. Probability runs the gamut from a zero likelihood to a certainty. What

> is impossible has a zero likelihood of occurring and what is plausible has a moderately high likelihood of occurring. But one sees more or less what the Court was driving at: *the fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it* . . . . [T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as "preponderance of the evidence" connote.

*Atkins,* 631 F.3d at 831-832 (emphasis added). The Court concluded that "[a]fter *Twombly* and *Iqbal* a plaintiff to survive dismissal 'must plead some facts that suggest a right to relief that is beyond the speculative level.'" *Id*. at 832; s*ee also Iqbal* 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

Turning to the present case, under the two-part analysis articulated in *Iqbal*, the Court must first separate the factual allegations contained in Morkoetter's First Amended Complaint from legal conclusions. This task reveals the following factual allegations: (1) that Morkoetter suffered from multiple physical, emotional, and mental health conditions while employed by Sonoco; (2) that Morkoetter intended to take FMLA leave once eligible as a result of these health conditions; (3) that Morkoetter informed Sonoco of this intention just before his one-year anniversary of employment with Sonoco; (4) that Morkoetter was fired by Sonoco on November 26, 2009; and (5)

that Morkoetter would have been eligible for FMLA leave approximately 5 weeks after November 26, 2009. Accepting these factual allegations as true, the Court must now determine whether Morkoetter has stated a plausible claim for relief under the FMLA.

Although a plaintiff need not plead the elements of a prima facie case in order to survive a motion to dismiss, those elements can serve as guidance when considering the sufficiency of a complaint. A plaintiff may establish a prima facie case under the FMLA for retaliation by either the "direct" or "indirect" method of proof. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Under the direct method of proof, the plaintiff must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id*. Because the Court finds Morkoetter's First Amended Complaint states a plausible claim for relief under the direct method, the Court need not consider the indirect method.

First, as described in more detail above, Morkoetter sufficiently alleged that he engaged in "statutorily protected activity" by giving notice to Sonoco of his intention to take FMLA leave once eligible in the future. (First Am. Compl. ¶ 4); *see Reynolds*, 594 F. Supp. 2d at 927-930. Second, Morkoetter allegedly suffered a "materially adverse action taken by the

12

employer" when he was fired on November 26, 2009. (First Am. Compl. ¶ 6); *see King*, 166 F.3d at 893 (finding that termination constitutes a materially adverse employment action).

The Court finds the issue of causation more troubling. The Seventh Circuit has held that causation may be established by a "temporal proximity" between a plaintiff's statutorily protected activity and subsequent termination. *King* 166 F.3d at 893. Thus, the crucial time period with regard to causation is the period between the alleged statutorily protected activity and the plaintiff's termination.

In this case, Morkoetter alleges that he notified Sonoco of his intention to take FMLA leave "just before [his] one year anniversary" and that he was terminated "about five (5) weeks prior to when he would have qualified for FMLA coverage." (First Am. Compl. ¶¶ 4 & 6). Thus, Morkoetter alleges a close temporal proximity between *when he gave notice of his intention to take FMLA leave* and *when he would become eligible for FMLA coverage*. Additionally, Morkoetter alleges a close temporal proximity between *when he was terminated* and *when he would become eligible for FMLA leave*. However, nothing in Morkoetter's First Amended Complaint specifically alleges a close proximity between when he gave notice of his intention to take FMLA leave in the future and the date of his termination. In other words, there is no clear indication of the timing between the alleged statutorily

13

protected activity and the termination. Nevertheless, the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal* and interpreted in this Circuit do not require more *specific* factual allegations, rather, they merely require *enough* factual allegations to render a claim plausible. The Court finds that, although unclear, Morkoetter's factual allegations regarding the timing of events giving rise to this dispute are sufficient to make a causal connection plausible. Therefore, Sonoco's motion to dismiss Morkoetter's FMLA claim is **DENIED**.

*MORKOETTER'S ERISA CLAIM*

ERISA § 510 provides: "It shall be unlawful for any person to discharge . . . a participant . . . for exercising any right to which he is entitled under . . . an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To obtain relief under ERISA § 510, a plaintiff must establish that "(1) [he] is a member of an ERISA plan; (2) [he] was qualified for the position; and (3) [he] was discharged under circumstances that provide some basis for believing that [the defendant] intended to deprive [him] of benefits. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 943 (7th Cir. 2007). Furthermore, a plaintiff must show that the defendant acted with the "specific intent of interfering with

his benefit rights." *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994).

In support of its motion to dismiss Morkoetter's claim under ERISA § 510, Sonoco argues that Morkoetter's "claim fails to meet the plausibility requirements under *Twombly* and *Iqbal*." (DE #16, p. 7-8). Employing the same analysis used to address Morkoetter's FLMA claim, the Court Finds that Morkoetter's ERISA § 510 must be dismissed for failure to set forth sufficient allegations to state a plausible claim for relief.

In this case, Morkoetter alleges that Sonoco knew that he had used Plan benefits in the past and that Sonoco "terminated him, in part, because he took advantage of [Sonoco's] Plan of healthcare insurance benefits and utilized those benefits, and [Sonoco] violated ERISA § 510 by interfering with Plaintiff's job by intentionally firing/laying off Plaintiff because of his utilization of Plan benefits." (First Am. Compl. ¶¶ 5 & 7). Thus, Morkoetter's ERISA § 510 claim essentially contains three factual allegations: (1) that he utilized benefits under a plan of insurance governed by ERISA; (2) that Sonoco knew that he used these benefits; and (3) that he was terminated. Morkoetter then jumps to the conclusion that he was terminated *because* of his use of plan benefits. However, Morkoetter provides no factual allegations whatsoever to support this conclusion. This is not sufficient to survive a motion to dismiss.

15

Although it is *possible* that Sonoco terminated Morkoetter for prior use of Plan benefits, without any additional factual allegations, determining whether Morkoetter has adequately alleged that his discharge is attributable to his use of Plan benefits requires outright speculation. Unlike Morkoetter's FMLA claim, Morkoetter sets forth no factual allegations whatsoever regarding the circumstances surrounding his termination in relation to his use of Plan benefits. As the Seventh Circuit explained in *Atkins*, "the fact that the allegations undergirding a plaintiff's claim could be true is no longer enough to save it." Thus, the Court finds that Morkoetter's claim under ERISA § 510 must be dismissed for failure to state a plausible claim for relief.[1]

CONCLUSION

For the reasons set forth above, the Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** as to Plaintiff's Family Medical Leave Act claim and **GRANTED** as to Plaintiff's Employee Retirement Income Security Act claim.

DATED: March 29, 2013              /s/RUDY LOZANO, Judge
                                   United States District Court

---

[1] The Court declines to address Sonoco's affirmative defense that Morkoetter failed to exhaust his administrative remedies, as it is not necessary for disposition of this motion.